UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVONTE C. CAMPBELL,

    Plaintiff,

v.

MATTHEW RODRIGUEZ *et al.*,

    Defendants.

_____/

Case No. 13-cv-14953
Hon. Matthew F. Leitman

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF #26)

### INTRODUCTION

In April 2013, two police officers employed by the City of Warren Police Department arrested Plaintiff Devonte Campbell ("Campbell"), a minor, for possessing alcohol. Campbell claims that after he was transported to the Warren Police Station, and while he was still handcuffed, two other police officers battered and injured him. Campbell thereafter filed this action against the City of Warren and the four officers asserting three claims under 42 U.S.C. § 1983: excessive force, failure to intervene, and malicious prosecution. Campbell also brings assault and battery and concert of action claims under Michigan law.

Following the close of discovery, the Defendants moved for summary judgment (the "Motion"). (*See* ECF #26.) The Court held a hearing on the Motion

1

on May 29, 2015. At the hearing, the Court announced that the Motion would be granted in part and denied in part. This Order incorporates, expands upon, and memorializes the Court's oral ruling. For all of the reasons stated at the hearing, and for all of the reasons stated below, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 25, 2013, two Warren police officers, Defendant Brian Price ("Officer Price") and David Huffman ("Officer Huffman") stopped Campbell and a friend, Kevin Laury ("Laury"), as they drove in Laury's vehicle. (*See, e.g.,* Campbell Deposition, ECF #26-3 at 24, Pg. ID 242.) After the officers first approached Laury's car, they smelled intoxicants coming from the vehicle. (*See* Price Deposition, ECF #26-4 at 10, Pg. ID 264.) Campbell and Laury were subsequently arrested for possessing alcohol, handcuffed, and transported to the Warren Police Station for processing. (*See id.* at 33-34, Pg. ID 245; *see also* Price Dep. at 9-11, Pg. ID 264.)

After Campbell and Laury arrived at the station, they were seated on a bench in the booking area. (*See* Campbell Dep. at 45, Pg. ID 248.) During the booking process, Officer Price removed Laury's handcuffs, and Laury tossed his jacket toward Officer Price's face. (*See id.* at 45-46, Pg. ID 248; *see also* Price Dep. at 27-28, Pg. ID 268; *see also* Booking Video, ECF #26-9.) As Officer Price tried to

"gain control" over Laury (Price Dep. at 29-30, Pg. ID 269), Campbell, who was still handcuffed, stood up from the bench "to move out of the way." (Campbell Dep. at 47-48, Pg. ID 248.)

According to Campbell, he was then battered on two separate occasions. First, Campbell says that after he stood up, two officers – Defendants Matthew Rodriguez ("Officer Rodriguez") and Steven Campbell ("Officer Campbell") – came into the booking area, "choked" him, and "grabbed [him] by [his] legs and slammed [him] on the ground." (*Id*. at 48-49, Pg. ID 248-249.) Campbell insists that he was not yelling, screaming, obstructing, nor disobeying orders at the time Officers Rodriguez and Campbell approached him and began slamming him to the ground. (*See id.* at 50-52, Pg. ID 249.) Campbell says that after this first battery, he was seated back on the bench.

Second, Campbell says that shortly after he was returned to the bench, Officer Rodriguez "grabbed [him] by the collar of [his] shirt and … threw [him] on the floor." (*Id.* at 51, Pg. ID 249.) Officer Rodriguez "then [dragged Campbell] by the collar, and [] took [him] to a room and closed the door." (*Id.* at 51, Pg. ID 249.) Campbell asserts that Officer Rodriguez then began kicking and punching him, and that Officer Rodriguez cursed at him, saying "[w]elcome to Warren!" (*Id.* at 52, Pg. ID 249; *see also id.* at 54-55, Pg. ID 250.) Officer Rodriguez then returned Campbell to the booking area. (*See id.*)

3

Following his arrest and booking, Campbell was charged with two crimes: (1) assaulting/resisting/obstructing a police officer (a felony); and (2) being a minor in possession of alcohol (a misdemeanor). (*See* Criminal Complaint, ECF #31-11, Pg. ID 609.) The assaulting/resisting/obstructing charge was based upon Campbell's alleged conduct in the booking area of the Warren Police Department. The minor in possession of alcohol charge was based upon Campbell's alleged possession of alcohol while in Laury's vehicle.

On July 25, 2013, the assigned prosecuting attorney informed Campbell and Campbell's criminal counsel, Annemarie Marino Lepore ("Lepore"), that he "would be moving to have Count 1 – the felony count of Assaulting/Resisting/Obstructing a police officer, dismissed." (Lepore Affidavit, ECF #31-8 at ¶8.) To facilitate the dismissal, the prosecutor provided Lepore and Campbell a "pre-printed form … titled Motion to Amend and/or Dismiss" (the "First Motion to Amend Form"). (*Id.* at ¶9.)

In the first paragraph of the First Motion to Amend Form, the prosecutor handwrote that the resisting and obstructing charge would be dismissed with prejudice, and that the minor in possession charge would be set for a pretrial conference. (*See* ECF #31-8 at 7, Pg. ID 594.) The First Motion to Amend Form also included a paragraph titled "Release." This paragraph stated, in its entirety:

4

> As a condition of this plea agreement (whether this case is dismissed or not), Defendant agrees to release the City, its officers, employees and agents from any and all claims, damages, or causes of action of any kind because of alleged injuries or other damages suffered by Defendant, heirs or assigns that arise from the incident which gave ri[s]e to the prosecution in this case. It is stipulated between the parties that this release-stipulation agreement: 1) is voluntary; 2) that there was no prosecutorial misconduct; and 3) enforcement of this agreement will not affect the relevant public interest. Stamps v. Taylor, 218 Mich App 626 (1996).

(*Id.*)  The final line of the Release was a blank space for a criminal defendant to place his initials.  Campbell, however, did *not* place his initials in the space provided in the Release.  Lepore says that she did not discuss the language of the Release with the prosecutor, and she therefore instructed Campbell not to place his initials in the paragraph containing the Release.  (*See* Lepore Aff. at ¶10.)  Campbell therefore left the space for his initials blank.  The assigned judge thereafter dismissed the felony resisting charge with prejudice.  (*See id.*)

On August 15, 2013, Campbell and the prosecutor reached a plea agreement on the remaining charge of minor in possession of alcohol.  Campbell agreed to plead no contest to the charge of "disorderly person[] in exchange for the dismissal of [the minor in possession] charge."  (*Id.* at ¶11.)   To memorialize the terms of the plea, the prosecutor presented Campbell and Lepore with another pre-printed form titled "Motion to Amend and/or Dismiss" (the "Second Motion to Amend Form").  The pre-printing on this form was identical to that on the First Motion to

Dismiss Form. (*See id.* at ¶12.) In the first paragraph, the prosecutor hand wrote that Campbell was pleading no contest to a new charge of disorderly person, and that the charge of minor in possession was being dismissed. (*See* ECF #31-8 at 9, Pg. ID 596.)

The Second Motion to Amend Form also contained the "Release" paragraph quoted above from the First Motion to Amend Form, with the same blank space for a criminal defendant to place his initials. Unlike in the First Motion to Amend, this time Campbell *did* place his initials in the space provided. (*See* ECF #31-8 at 9, Pg. ID 596.) Lepore says that while she still did not speak with the prosecutor about the language of the Release, she was comfortable with Campbell signing it. Lepore did not believe that the Release would apply to any civil claims that Campbell could assert against the police or the City of Warren related to his treatment at the police station because the criminal charge arising out of his time at the station – i.e., the resisting and obstructing charge – had already been dismissed. (*See* Lepore Aff. at ¶12.) The judge accepted the plea agreement.

In December 2013, Campbell filed this action related to the incidents that transpired at the Warren Police Station following his arrest. (*See* the Complaint, ECF #1.) He filed an Amended Complaint on March 27, 2014. (*See* the Amended Complaint, ECF #12.) In the Amended Complaint, Campbell brings six counts

6

against the Defendants, none of which relate to Campbell's initial arrest for being a minor in possession of alcohol:

- Excessive force in violation of the Fourth Amendment against Officers Rodriguez and Campbell;
- Failure to intervene to stop the incidents of excessive force in violation of the Fourth Amendment against Officers Campbell, Price, and Huffman[1];
- Malicious prosecution in violation of the Fourth Amendment against all Defendants;
- Assault and battery in violation of Michigan law against Officers Rodriguez and Campbell;
- Concert of action in violation of Michigan law against all Defendants; and
- Municipal liability against the City of Warren (the "City").

## GOVERNING LEGAL STANDARD

A movant is entitled to summary judgment when he "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. However, summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require

---

[1] Officer Huffman has since been dismissed from this action. (*See* ECF #27.)

submission to a jury." *Id.* at 251-252.

When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## ANALYSIS

**A.     Defendants Are Not Entitled to Summary Judgment on the Basis that Campbell Released His Claims Against Them**

Defendants argue that Campbell's signing of the Release entitles them to summary judgment. (*See* Mot. at 10-13, Pg. ID 180-183.)  Defendants are wrong for two reasons: (1) it is not clear, as a matter of law, that the Release covers the claims Campbell asserts here and (2) Defendants have failed to satisfy their burden on summary judgment to present evidence that enforcing the Release is in the public's interest.

First, Defendants are not entitled to summary judgment based on the Release because the Release does not plainly and unambiguously apply to the claims Campbell brings in this action.  The Release states that Campbell is releasing "all claims … that arise from the incident which gave rise to the prosecution." (ECF #31-8 at 9, Pg. ID 596.)  But here, as described above, Campbell's criminal prosecution involved charges related to *two* separate and distinct *incidents* (plural):

8

Campbell's initial possession of alcohol, and his later alleged resisting and obstructing police officers at the Warren Police Station. It is not self-evident, in light of the use of the word "incident" (singular) in the Release, that Campbell agreed to release his claims that arose out of the latter incident at the police station. Moreover, it is undisputed that when Campbell initialed the Release on the Second Motion to Amend Form, the only "incident" that remained at issue at that point was his alleged possession of alcohol – the charge related to other incident, the alleged resisting, had already been dismissed. Under all of these circumstances, the Court cannot conclude as a matter of law that the Release covers claims arising out of the incident at the police station.

Second, Defendants have not established, as a matter of law, that the Release is enforceable against Campbell. A criminal defendant's agreement to release civil rights claims in connection with a plea agreement may be enforceable if "(1) the agreement was voluntary; (2) there was no evidence of prosecutorial misconduct; and (3) enforcement of the agreement will not adversely affect relevant public interests." *Coughlen v. Coots*, 5 F.3d 970, 974 (6th Cir. 1993). A municipal defendant seeking to enforce a release agreement bears the burden of proof on all three of these elements. *Id.* at 973.

In this case, there is no dispute that Campbell voluntarily signed the Release, nor is there any evidence of prosecutorial misconduct. But the Defendants have

9

failed to provide any evidence that the "enforcement of the agreement will not adversely affect relevant public interests." To make such a showing, Defendants must "demonstrate that obtaining the release was motivated by an independent, legitimate criminal justice objective." *Id.* at 975. They could have done this in many different ways:

> Examples of [] legitimate criminal justice objectives that come to mind are situations where the cost of prosecution would outweigh the benefit accruing to the public from a conviction; where the strength of evidence of criminal conduct is doubtful even though charges were filed in good faith; where witnesses or evidence are no longer available; where evidence is subsequently discovered that points to the criminal case defendant's innocence; or where criminal charges are not the product of prosecutorial misconduct and both sides benefit substantially from a balanced settlement in the sense that both avoid exposure to potential liabilities and expenses.

*Id*. Here, however, Defendants have not presented any evidence – such as an affidavit or testimony from the assigned prosecutor – as to what factors the prosecutor was considering when he negotiated the plea deal that included the Release. There simply is no evidence in this record that in *this* particular case, enforcement of the Release would not adversely affect the public interest or that obtaining the Release was motivated by a legitimate criminal justice objective.

Absent such evidence, the Defendants are not entitled to summary judgment based upon the Release.[2]

**B.  Officers Rodriguez and Campbell are Not Entitled to Qualified Immunity and Are Not Entitled to Summary Judgment on Campbell's Excessive Force Claim**

Officers Rodriguez and Campbell argue that they are entitled to qualified immunity on Campbell's Fourth Amendment excessive force claim because the level of force they used in the booking area was "not unreasonable as a matter of law." (Mot. at 8-10, Pg. ID 178-180; 17-23, Pg. ID 187-193.) The Court disagrees.

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015). "Each defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). "In assessing qualified immunity, the court, viewing the facts in the light most favorable to the plaintiff, determines whether: 1) the violation of a constitutional right has occurred; and 2) the constitutional right at issue was clearly established at the time of defendant's

---

[2] The Court's holding that Defendants are not entitled to summary judgment based upon the Release does not mean that Defendants cannot ultimately prevail on their defense based upon the Release. At trial, Defendants will have the opportunity to present evidence that (1) the Release does apply to Campbell's claims and (2) the Release is enforceable under the Sixth Circuit's three-part test.

11

alleged misconduct." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009). "The Court may address these prongs in any order, and if the plaintiff cannot make both showings, the [defendant] officer is entitled to qualified immunity." *Brown*, 779 F.3d at 412. "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

Here, there is no dispute about the clearly-established nature of the right at issue: "since at least 2009, the use of violence against a subdued and non-resisting individual has been clearly established as excessive, regardless of whether the individual had been placed in handcuffs." *Brown*, 779 F.3d at 419. Thus, Campbell had the right to be free from violent force if he was subdued and not resisting.

When the evidence is viewed in the light most favorable to Campbell, there is a factual dispute as to whether he was subdued and resisting at the time he was met with violent force, and thus the officers are not entitled to qualified immunity on Campbell's excessive force claim. Campbell testified that while handcuffed, and while not disobeying any orders or resisting in any way, Officer Campbell "choked" him and Officer Rodriguez "grabbed [him] by [his] legs and slammed [him] on the ground." (Campbell Dep. at 47-50, Pg. ID 248-249.) Campbell also testified that Officer Rodriguez later "dragged [him] by [his] collar]" – while

12

Campbell was still handcuffed and not resisting – into another room where Campbell says Officer Rodriguez repeatedly punched and kicked him. (*Id.* at 50-55, Pg. ID 249-250.) Accepting Campbell's testimony as true for the purposes of summary judgment, he did not pose an immediate threat to the officers and was not actively resisting their commands. *See, e.g., Correa v. Simone*, 528 Fed App'x 531, 534 (6th Cir. 2013) ("[D]efendants pose no immediate threat where they are not resisting and have their hands up in the air'"). Yet, the officers still exerted substantial force on Campbell on two separate occasions in the booking area.

The officers contend that Campbell was disobeying orders, was providing verbal encouragement to Laury, and that the force they each used was not excessive. (*See, e.g.,* Officer Campbell Dep., ECF #26-11 at 27, Pg. ID 334; Officer Rodriguez Dep., ECF #26-10 at 25-28, Pg. ID 323.) But, the officers' "contentions ... must be rejected for qualified immunity analysis because they are premised on [the officers'] version of the facts. [ ... ] These material facts are disputed by [Campbell] and are therefore for a jury to decide at trial." *Grawery*, 567 F.3d at 312. The officers also stress that the video tape of the incident indisputably supports their version of events and that they are thus entitled to summary judgment notwithstanding Campbell's contrary testimony. But the Court has carefully reviewed the video – which does not contain any audio recording (see ECF # 26-9) – and has concluded that the video is not fundamentally inconsistent

13

with Campbell's testimony. In fact, it supports his testimony in certain respects. Thus, the video does not entitled the officers to summary judgment.

Viewing the evidence in the light most favorable to Campbell, a jury could determine that both officers (and in the case of Officer Rodriguez, in both of his applications of force) exerted excessive and unreasonable force upon a non-resisting Rodriguez. Officers Campbell and Rodriguez are therefore not entitled to summary judgment on their qualified immunity defense.

**D.     Officers Campbell and Rodriguez Are Not Entitled to Summary Judgment on Campbell's State-Law Assault and Battery Claim**

Officers Campbell and Rodriguez argue that they are entitled to summary judgment on Campbell's claim for assault and battery under Michigan law for same the reason they are entitled to qualified immunity: namely, that their actions were "objectively reasonable under the circumstances." (*See* Mot. at 17-23, Pg. ID 187-194.) The officers also argue they are entitled to "governmental immunity" under Michigan law. (*See id.* at 9, Pg. ID 179.) The Court again disagrees.

"Under Michigan law an assault is 'an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.' A battery is 'an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person.'" *Grawey*, 567 F.3d at 315 (quoting *People v. Nickens*, 470 Mich. 622, 685 N.W.2d 657, 661 (2004)).

14

For all of the reasons stated above, when the Court views the evidence in Campbell's favor, there is a clear factual dispute as to whether Officers Campbell and Rodriguez subjected Campbell to an unlawful assault and battery. Accepting Campbell's testimony as true for the purposes of summary judgment, a jury could find that the actions of Officers Campbell and Rodriguez placed Campbell "in reasonable apprehension of receiving an immediate battery" and that both officers battered him.

Moreover, Officers Campbell and Rodriguez are not entitled to governmental immunity under Michigan law.

> Michigan state law imposes a subjective test for governmental immunity for intentional torts, based on the officials' state of mind, in contrast to the objective test for federal qualified immunity. Michigan governmental immunity 'protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent.' […] That malicious intent is defined as 'conduct or a failure to act that was intended to harm the plaintiff ... [or] that shows such indifference to whether harm will result as to be equal to a willingness that harm will result.'

*Brown*, 779 F.3d at 420 (quoting *Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217, 228 (2008)). Taking Campbell's version of events as true, the officers battered him and threw him onto the ground despite the fact that he was not resisting or obstructing. "A jury could find that this behavior 'shows such indifference to whether harm would result as to be equal to a willingness that harm

15

would result.'"  *Id.* at 421 (quoting *Odom*, 760 N.W.2d at 225.)  Officers Campbell and Rodriguez are therefore not entitled to summary judgment on Campbell's Michigan law assault and battery claims.

### E.   Defendants Are Entitled to Summary Judgment on Campbell's Malicious Prosecution Claim

Defendants argue that they are entitled to summary judgment on Campbell's malicious prosecution claim.  (*See* Mot. at 13-15, Pg. ID 183-185.)  The Court agrees.  "To prevail on a 42 U.S.C. § 1983 malicious prosecution claim premised on a violation of the Fourth Amendment," a plaintiff must prove:

> (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was a lack of probable cause for the prosecution; (3) as a consequence of the prosecution, the plaintiff suffered a deprivation of liberty, as understood in Fourth Amendment jurisprudence, *apart from the initial seizure*; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Halasah v. City of Kirtland, Ohio*, 574 Fed. App'x 624, 631 (6th Cir. 2014) (emphasis added) (citing *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010)).

Campbell has not provided any evidence that "as a consequence of the prosecution, [he] suffered a deprivation of liberty, as understood in Fourth Amendment jurisprudence, apart from the initial seizure."  Campbell asserts that "his ability [to post a bond] was greatly diminished when [he was] charged with [resisting arrest, a felony], [which] require[ed] [him to spend] additional time in

16

jail before being able to post the requisite bond." (Campbell Response Br., ECF #31 at 33-34, Pg. ID 474-475.) But Campbell has not supported this claim with any actual evidence that the addition of the felony charge resulted in a higher bond. Nor has he presented evidence that he was, in fact, unable to pay the higher bond that allegedly resulted from the addition of the felony charge. And Campbell's counsel at the hearing confirmed that there is no evidence in the record supporting Campbell's assertions regarding his inability to pay the bond. Defendants are therefore entitled to summary judgment on Campbell's claim for malicious prosecution.

**F.    The City of Warren is Entitled to Summary Judgment on Campbell's Claim for "Municipal Liability"**

The City argues that Campbell's claim for "municipal liability" fails because "Campbell has failed to identify an official policy or custom at the City of Warren or City of Warren Police Department that resulted in the deprivation of his of his civil rights." (Mot. at 15-16, Pg. ID 185-186.) The Court agrees.

Campbell "cannot base his claims against [the City] solely on the individual defendants' conduct because *respondeat superior* is not available as a theory of recovery under section 1983.'" *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 403 (6th Cir. 2010) (internal quotation marks omitted) (refusing to apply *respondeat superior* liability under 42 U.S.C. § 1983); *see also Jenkins v. Rock Hill Local School Dist.*, 513 F.3d 580, 589 (6th Cir. 2008) ("The district court also

17

did not err in granting summary judgment…because there is no *respondeat superior* liability in actions under § 1983"). Instead, "[t]o hold [the City] liable, [Campbell] must: "(1) identify [a] [City] policy or custom, (2) connect the policy to [the City], and (3) show that his particular injury was incurred due to the execution of that policy." *Vereecke*, 609 F.3d at 403. He has failed to do so.

Campbell has failed to point to any specific policy or custom that caused his claimed injuries. Campbell argues that the City has made public comments that amount to an "adopt[ion of] the unlawful actions of the defendant officers," and he says "it is evident, and overtly obvious, the position of the City is the Officers can use whatever force they wish towards those they arrest." (Mot. at 36-37, Pg. ID 477-478.) But the vague and non-binding statements Campbell identifies cannot support a finding that there is a policy or custom that caused his injuries, and Campbell has not presented any other evidence to support his claim that the Defendant officers could "use whatever force they wish." His municipal liability claim therefore fails.

**G.    All Defendants Are Entitled to Summary Judgment on Campbell's "Concert of Action" and "Failure to Intervene" Claims**

Finally, Defendants argue that they are entitled to summary judgment on Campell's "concert of action" and "failure to intervene" claims. The Court agrees that these claims fail.

In order to proceed with his "concert of action" claim, Campbell must prove "that all defendants acted tortuously pursuant to a common design." *Abel v. Eli Lilly & Co.*, 343 N.W.2d 164, 176 (Mich. 1984.) Campbell, however, has not presented any evidence that the Defendants acted with such a "common design" or that there was any agreement between the Defendants to injure him. Campbell appears to rely on the fact that "[n]ot one of the defendant officers in this case did anything to stop" Campbell from being injured (*see* Resp. Br. at 35, Pg. ID 476), but he has not cited any authority that a "concert of action" theory can proceed on this basis, or that the Defendants were in any position to stop what happened to him.

Likewise, Campbell's "failure to intervene" claim fails. The officers in this case were reacting to a chaotic event in the booking area, and there is no evidence in the record that any officer had the ability to predict or stop what happened to Campbell. Indeed, Officer Price was busy attempting to control Laury (who had previously thrown his jacket toward Officer Price's face), and there is no evidence Officer Campbell had an opportunity to stop Officer Rodriguez from dragging Campbell into the back hallway. Campbell has not presented any evidence that can support this claim.

19

## CONCLUSION

For all of the reasons stated above, Defendants' Motion for Summary Judgment (ECF #26) is **GRANTED IN PART AND DENIED IN PART AS FOLLOWS:**

- Defendants are **DENIED** summary judgment based on the Release;
- Officers Campbell and Rodriguez are **DENIED** summary judgment with respect to Campbell's excessive force and assault and battery claims; and
- Defendants are **GRANTED** summary judgment with respect to Campbell's malicious prosecution, failure to intervene, concert of action, and municipal liability claims.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: June 8, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 8, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113